```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


UNITED STATES OF AMERICA   *
                           *  Case No. 1:12CR443-1
vs.                        *
                           *  Greensboro, North Carolina
TERRY LEE BETHEA,          *  June 13, 2013
                           *  2:25 p.m.
           Defendant.      *
***************************


           TRANSCRIPT OF SENTENCING HEARING
        BEFORE THE HONORABLE CATHERINE C. EAGLES
              UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Government:     ANDREW C. COCHRAN, ESQUIRE
                        Assistant United States Attorney
                        Post Office Box 1858
                        Greensboro, North Carolina 27402


For the Defendant:      WILLIAM S. TRIVETTE, ESQUIRE
                        Assistant Federal Public Defender
                        301 North Elm Street, Suite 410
                        Greensboro, North Carolina 27401


Court Reporter:         Lori Russell, RMR, CRR
                        P.O. Box 20593
                        Winston-Salem, North Carolina 27120




       Proceedings recorded by stenotype reporter.
    Transcript produced by Computer-Aided Transcription.
```

**EXHIBITS**

**For Defendant:**                                                              **Page**

1      Sketch of Subway
 For Identification                                                              6

```
 1                     P R O C E E D I N G S
 2            (Defendant present.)
 3            THE COURT:  Okay.
 4            MR. COCHRAN:  Our next case this afternoon, Your
 5   Honor, if it pleases the Court, is United States of America
 6   versus Terry Lee Bethea, docket number 1:12CR443-1.  The
 7   Defendant is represented by Mr. Trivette.  His case is also
 8   on for sentencing today.
 9            THE COURT:  All right.  It looked like there was
10   initially a bit of a dispute about restitution, but that's
11   all been worked out I understand.
12            MR. TRIVETTE:  It has, Your Honor.  The parties
13   agree the appropriate amount is the amount of money that was
14   taken out of the drawer and that -- and no other amounts.
15            THE COURT:  Three seventy-eight seventy-eight.
16            MR. TRIVETTE:  Yes, ma'am.
17            THE COURT:  All right. Okay.  And there was a
18   Defendant's position paper.  I saw that.  All right.  So you
19   have seen the presentence report, Mr. Trivette, then?
20            MR. TRIVETTE:  I have, Your Honor.
21            THE COURT:  And you reviewed it with Mr. Bethea?
22            MR. TRIVETTE:  Yes, ma'am.
23            THE COURT:  And are you ready for his sentencing
24   hearing today?
25            MR. TRIVETTE:  Yes, ma'am.
```

```
1                THE COURT:  And, Mr. Bethea, good afternoon.
2                THE DEFENDANT:  Good afternoon, ma'am.
3                THE COURT:  Have you seen a copy of your
4    presentence report?
5                THE DEFENDANT:  Yes, I have.
6                THE COURT:  Have you read it and talked to your
7    lawyer about it?
8                THE DEFENDANT:  Yes, I did.
9                THE COURT:  And do you understand the report?
10               THE DEFENDANT:  Yes, ma'am.
11               THE COURT:  Okay.  Mr. Bethea, you can take your
12   seat.
13       Let's see.  In terms of objections to the presentence
14   report, do I need to make any corrections to it about the
15   restitution?
16               MR. TRIVETTE:  I'm not -- yes, Your Honor, I guess
17   so.
18               THE COURT:  I guess I do because the probation
19   officer I think has concluded $4,345.38.  So let me see
20   where that would be in here.
21               MR. COCHRAN:  It's on page 21, Your Honor,
22   paragraph 90 at the top of the page.
23               THE COURT:  Thank you.  All right.  So I'll modify
24   paragraph 90 to strike the restitution to Continental
25   Casualty Company?
```

```
 1              MR. COCHRAN:  Yes, Your Honor.
 2              THE COURT:  Any other amendments to the
 3    presence report?
 4              MR. TRIVETTE:  Just it -- well, it also had $500
 5    to Subway, so I guess that's --
 6              THE COURT:  Thank you.  I'll correct that as well.
 7    I'll strike the restitution to Continental Casualty and
 8    amend the amount to Subway to $378.78.
 9              MR. TRIVETTE:  Yes, ma'am.
10              THE COURT:  Otherwise, the Court will adopt the
11    presence report as written and adopt the findings of
12    fact -- the factual findings in that report as the Court's
13    own.
14         The Court further finds that the report accurately
15    calculates the guidelines applicable in this case.  The
16    total offense level is 21.  Criminal history category is
17    III.  The guideline range on Count One is 46 to 57 months
18    and 84 months consecutive on Count Two.  The supervised
19    release range is 1 to 3 years on Count One, 2 to 5 years on
20    Count Two; and the fine range is 12,500 to $125,000.
21         Did I forget anything or misspeak?
22              MR. COCHRAN:  No, Your Honor.
23              MR. TRIVETTE:  No, Your Honor.
24              THE COURT:  All right.  Anybody -- I'll consider
25    those on an advisory basis, along with other relevant
```

```
 1  factors.
 2       Does anybody have any additional evidence?
 3            MR. COCHRAN:  No, Your Honor.
 4            MR. TRIVETTE:  Your Honor, I'll be making a
 5  proffer during my statement to the Court.
 6            THE COURT:  All right.
 7            MR. TRIVETTE:  Your Honor, we thank both
 8  Mr. Cochran from the Government and probation, Ms. Sonya
 9  Schroeder, for their work in getting the restitution
10  straight and I think it is the appropriate amount.
11       I'd ask the Court to consider in its judgment, if
12  appropriate, that -- the money is sitting in the evidence
13  room at the Winston-Salem Police Department.  If the Court
14  please if you put in something like the Winston-Salem police
15  can return it to the Clerk of Court, then it won't be a
16  double payment.  We'll try to be working that out under any
17  circumstances.
18       The other thing that I have put in the report, Your
19  Honor, is regarding the abduction.  It is the defense's view
20  that four levels for the abduction is excessive.  I did not
21  term it as an objection.  There was some movement within the
22  Subway and I'm going to hand up a document that probably
23  should be marked as Defendant's Exhibit No. 1 and I've given
24  a copy to Mr. Cochran.
25            (Exhibit marked for identification.)
```

MR. TRIVETTE: Your Honor, that sketch shows roughly what the scale of the Subway is. It was a -- it's a relatively small restaurant. As you walk in the door there that says "Entrance," there are some tables and chairs and then you walk up to the counter.

Now, what happened that night, Mr. Bethea walked in and two employees were located in the area where you see a 30. That's my estimate of 30 feet. That's the -- the area of -- the employee area back there. Both workers were inside that area. And he walked in and the evidence does show that he moved the female employee a short distance, moved the male employee a short distance. It's not exact, but it certainly is a distance less than 30 feet. I've talked about this distance with Mr. Bethea and he recalls it being an extremely short distance: 5, 10 feet. Very short.

Your Honor, the Fourth Circuit has basically said almost -- I think the least amount of distance I saw was maybe 60 feet of movement. They say that would qualify as an abduction, which is why I did not object to it. It's a very broad and general permission for this District Court to find abduction.

But if you look at the definition that's in the guidelines -- and I put it on page 2 -- "'Abducted' means" -- this is an example -- "means that a victim was forced to accompany an offender to a different location.

| | |
|---|---|
| 1 | For example, a bank robber's forcing a bank teller from the |
| 2 | bank into a getaway car would constitute abduction." Well, |
| 3 | I would agree that doing something like is in the definition |
| 4 | there, putting someone in your car to facilitate an escape, |
| 5 | definitely qualifies as abduction. |
| 6 | Now, we also have in the guidelines at another part, in |
| 7 | 1B1.1, physical restraint, but that -- if you look at that |
| 8 | example, physical restraint -- "physically restrained" means |
| 9 | the forcible restraint of the victim, such as being tied up, |
| 10 | bound or locked up. None of -- neither of those -- of |
| 11 | course, physical restraint only carries a two-level |
| 12 | increase. Abduction carries a four-level increase. I |
| 13 | contend and argue to the Court that neither of these are |
| 14 | appropriate. |
| 15 | The -- the distances that they were moved is subsumed |
| 16 | within the robbery guidelines, and he's getting 7 years on |
| 17 | the gun count and an additional amount on the robbery. He |
| 18 | has pled to both. We contend that the appropriate guideline |
| 19 | range for the Court to consider here, although it's not an |
| 20 | objection, would be more like -- instead of an offense level |
| 21 | 21, take away the four levels for abduction and that's 17. |
| 22 | At criminal history category II, that's more like 27 to 33. |
| 23 | So 2 to 3 years in addition to the 7 years, we contend, more |
| 24 | than punishes him for the offense. |
| 25 | Now, we do concede using a firearm in a robbery is a |

```
 1   serious offense.  I know this Court has probably had years
 2   of experience in the state with similar crimes.  I don't
 3   know what he would have gotten in state court.  This Court
 4   probably does.  But I would doubt that it is as severe as
 5   this sentence.
 6        Your Honor, we ask the Court then to vary down on the
 7   robbery count, the one that you have some discretion, to a
 8   sentence below what is now at 46 to 57 months.
 9        Thank you, Your Honor.
10             THE COURT:  I just want to be sure I understand
11   your argument.  You're not objecting to the four-point
12   increase because of the case law.  You're just saying in the
13   circumstances of this case it seems to really bump him up
14   too high and --
15             MR. TRIVETTE:  And it's a *de minimis* movement.
16   There is movement of both employees but a very short
17   distance.  The evidence does show, if you look at the
18   sketch, that after the robbery was over he told them to go
19   out the back door.  I contend that should not count because
20   the abduction talks about accompanying, making an employee
21   accompany him.  So if he just says go out the back and he
22   goes out the front, that distance shouldn't count.  So
23   whatever distances are involved here are *de minimis*.
24             THE COURT:  All right.  Thank you.
25        For the Government?
```

1    MR. COCHRAN:  Thank you, Your Honor.
2    As Mr. Trivette indicated, we're all in agreement here
3    that the guidelines are properly calculated and that there
4    was an abduction here for the purposes of the 2B3.1
5    guideline.
6    And Mr. Trivette was speaking about how it was only a
7    short distance that they were moved, at least the initial
8    distance.  There were two people -- two victims in this
9    case, Your Honor, who were moved approximately 30 feet; and
10   while that might sound like a short distance while we're
11   talking about it here in the courtroom, we can only imagine
12   how terrifying that was for the victims in this case who
13   were there working in the Subway doing their job.
14   The Defendant comes in armed with an handgun, points
15   the handgun at them and makes them get money out of the
16   register and move this additional distance away and then
17   also makes them go out the back door as he goes out the
18   front door while he was leaving.  Maybe that counts for
19   abduction distance, maybe it doesn't.  Regardless, I'm sure
20   it was pretty terrifying for the victims, Your Honor, and
21   that's something that needs to be taken into account while
22   the Court fashions its sentence that's appropriate in
23   considering the 3553(a) factors in this case.
24   I would say that I think to completely discount the
25   abduction in this case, as Mr. Trivette is asking for, won't

account for that, Your Honor, won't account for the distance that these people were moved and the terror that they must have felt wondering if they were going to get out of this situation alive. And fortunately they did, but I do think that's conduct that needs to be accounted for.

I do agree with Mr. Trivette that certainly the abduction could have been worse. We can envision a scenario as outlined in the example of the guidelines where a defendant could have come in and actually taken them with him into the car and left and kept them with him at some length -- for some period of time. I agree that would have been worse. There are scales of everything. And while this isn't at that level, it does count for abduction like we talked about before and it also is pretty significant for the victims in this crime to have that additional factor that wouldn't be taken into account if the Court were to vary downward as Mr. Trivette suggests.

What I would suggest that the Court do to fashion a sentence that would be appropriate to account for the Defendant's conduct, to deter future crime, and the other factors of 3553(a) would be to accept the guideline range as calculated, Your Honor, and consider sentencing the Defendant towards the lower end of that guideline range since this certainly accounts for conduct where the victims in this case were abducted, but perhaps we can envision

1  abductions that could be worse.  Perhaps move it a little
2  bit down the scale toward the lower end of that range.
3      And I do think it's also important to point out a few
4  items the Defendant has on his criminal history, Your Honor.
5  The defendant has a long history of misdemeanor convictions,
6  as the Court probably noticed.  I'm not going to point out
7  each individual one, but I would like to point out, Your
8  Honor, that at the top of page 10, item No. 38, the
9  Defendant was convicted of misdemeanor carrying a concealed
10 gun in 1998.  Over on page 11, item No. 41, Your Honor, the
11 Defendant was convicted of felony possession with intent to
12 sell cocaine and received a four- to five-month suspended
13 sentence.  As the Court is aware, that's a felony conviction
14 under North Carolina law but falls under *Simmons* over here.
15 So it doesn't count as a felony conviction for federal
16 court, but I do think it's significant.  Also, in February
17 of 2002, the Defendant did also have his probation revoked
18 for that offense and then he has continued to get some other
19 misdemeanor convictions after that point, Your Honor.
20     So the Defendant does have -- it's not his first brush
21 with the law, to put it one way, Your Honor.  It's not his
22 first offense that involved a firearm.  And I do think this
23 robbery is certainly serious enough where a variance would
24 not account for the type of conduct that he did, but a
25 sentence towards the lower end of the guideline range would,

```
 1   followed by the mandatory consecutive sentence of 84 months
 2   on the 924(c).  And that's the sentence that I would ask the
 3   Court to impose in this case.
 4        Thank you very much, Your Honor.
 5            THE COURT:  All right.  Thank you.
 6        Mr. Bethea, if you would stand.
 7        (The Defendant complied with the request.)
 8            THE COURT:  If there's anything else that you want
 9   to say to me, I'd be glad to hear from you.  You certainly
10   don't have to speak.  I won't hold it against you if there's
11   nothing you want to add to what your attorney said; but if
12   there's anything you want to tell me, I'll be glad to
13   listen.
14            THE DEFENDANT:  Thank you, Your Honor.
15        First of all, I would like to apologize to the D.A., to
16   you, and the taxpayers for my wrongdoing.  I know what I did
17   was wrong and I'd like to apologize.  If the victims were
18   here right now, I'd apologize to them for what I have done.
19        You know, I mean, it hurts me right now.  I feel so
20   embarrassed about what I have done because, like, my
21   daughter came to see me.  You know, I mean, she asked me how
22   can I do something stupid like that and that right there
23   hurt me more than me being locked up, you know what I mean,
24   for me to do a stupid thing like that.  And I apologize for
25   what I have done.
```

6/13/13 - USA v. BETHEA - SENTENCING HEARING

14

                You know, I would like to thank Mr. Trivette right now
for all the things he has done on my behalf.
         Like I say, Your Honor, I apologize for what I've done
and right now I just ask for your mercy.  Thank you.
                THE COURT:  All right.  Thank you, Mr. Bethea.
You can have a seat for a moment.
         (Pause in the proceedings.)
                THE COURT:  All right.  Stand up, Mr. Bethea.
         (The Defendant complied with the request.)
                THE COURT:  I've taken the guidelines into account
on an advisory basis and considered the other factors as set
forth by Congress as being important in sentencing.  It does
seem to me that the guidelines take into account the
information relevant in this case and give that information
appropriate weight so that a sentence within the guideline
range is appropriate.
     I've considered the Defendant's argument for a sentence
below the guideline range on the -- on Count One,
specifically that the four-point enhancement overstates the
seriousness of the nature of the offense.  Certainly I agree
that this is not the worst abduction that there could be,
but it was a serious offense involving a gun.  There were
two victims, which I think makes it worse, two people who
lived through this; and it just seems that under the -- the
nature and circumstances of the offense make a sentence

within the guideline range appropriate. But I do agree it's not necessary to go to the middle or the high end I believe would be inappropriate.

So on Count One, I will sentence him to 46 months in the custody of the Bureau of Prisons and on Count Four (sic), as required by law, 84 months to run consecutively.

He'll pay a special assessment of $100 on each count, due and payable immediately. To the extent he cannot immediately comply, the Court recommends he participate in the Inmate Financial Responsibility Program.

The Court will waive a fine based on inability to pay but will require restitution in the amount of $378.78.

You didn't ask me for -- it didn't appear substance abuse was a big issue?

MR. TRIVETTE: We have not made a request for intensive.

THE COURT: Okay. The active sentence will be followed by a period of three years of supervised release on each count to run concurrent.

You'll need to comply with the standard conditions, as well as special conditions set forth by the probation officer in the recommendations. To summarize those, he shall provide any requested financial information to the probation officer since it appears the crime was motivated by financial need and he shall not borrow any money without

1  approval.  There were some substance abuse issues, so I will
2  require him to submit to testing at any time and treatment
3  as directed.
4      It's agreeable to the Government to direct the police
5  department to turn the money over to the Clerk?
6          MR. COCHRAN:  Yes, Your Honor.
7          THE COURT:  All right.  So ordered so that can be
8  applied to his restitution.
9      He does have a right to appeal.  That has to be done in
10 writing within 14 days.
11     And, Mr. Bethea, if you want to do that, you can let
12 Mr. Trivette know.
13     What have I forgotten or what else does anybody need to
14 ask me?
15         MR. TRIVETTE:  Your Honor, I do not note anything.
16         MR. COCHRAN:  Your Honor, I request that the
17 firearm be destroyed after the appellate period has run.
18         THE COURT:  So ordered.
19     Mr. Bethea, it's just a sad thing -- well, it's sad
20 when anybody goes to prison, it really is, but, you know,
21 somebody your age and I -- I know -- I could tell from your
22 voice that your experience with your daughter was really
23 tough for you, and I hope when you get out that nothing like
24 this happens again and you're able to be with your family,
25 where you need to be.  Good luck.

```
 1                THE DEFENDANT:  Thank you, Your Honor.
 2                THE COURT:  Did I forget something?
 3                PROBATION OFFICER:  Your Honor, it appears on page
 4   21 of the presentence report that -- I think you ordered
 5   restitution of $378.78.  Seized was 368.50 so he would have
 6   like $10 and some balance that would need to be ordered as
 7   restitution or as a payment on supervised release.
 8                THE COURT:  All right.  Thank you.  I appreciate
 9   that.  I didn't pick up on the difference there.
10        So I will direct him to pay any unpaid restitution and
11   it looks like it will be less than $15.  So any unpaid
12   restitution in a one-time payment 120 days after his release
13   from active incarceration.
14        All right.  Anything else?
15                MR. TRIVETTE:  Not from the defense, Your Honor.
16                THE COURT:  All right.  Thank you, Mr. Bethea.
17   Good luck.
18                THE DEFENDANT:  Thank you very much.
19                THE COURT:  I believe that's the business for
20   today?
21                MR. COCHRAN:  Yes, Your Honor, that completes our
22   docket.
23                THE COURT:  All right.  We'll be adjourned.
24          (Proceedings concluded at 2:45 p.m.)
25
```

```
1                        C E R T I F I C A T E

2            I, LORI RUSSELL, RMR, CRR, United States District
     Court Reporter for the Middle District of North Carolina, DO
3    HEREBY CERTIFY:

4            That the foregoing is a true and correct transcript of
     the proceedings had in the within-entitled action; that I
5    reported the same in stenotype to the best of my ability and
     thereafter reduced same to typewriting through the use of
6    Computer-Aided Transcription.

7

8    _____         Date:  8/19/13
     Lori Russell, RMR, CRR
9    Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```